UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN TESCHENDORF,

    Plaintiff,

v.                                                                                               Case No. 17-13967

RIIS, LLC and                                                             HON. AVERN COHN
GODFREY NOLAN,

    Defendants.

_____/

## **MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION (Doc. 12)[1]**

### I.    INTRODUCTION

This is a Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and breach of contract case. Plaintiff Ann (Teschendorf) is suing her former employer RIIS, LLC (RIIS) and RIIS owner Godfrey Nolan. Teschendorf says that RIIS withheld payment of wages and commissions, clawed back commissions, and retaliated against her for complaining about her right to be paid. Teschendorf's complaint is in five counts:

    Count I: Failure to Pay Wages under the FLSA

    Count II: Retaliation in Violation of the FLSA

    Count III: Breach of Contract

---

[1] Although originally scheduled for hearing, upon review of the parties' papers the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Count IV: Action for Accounting

Count V: Quantum Meruit

(Doc. 1). Teschendorf asks for recovery of unpaid wages, unpaid overtime wages, liquidated damages, attorney's fees, and a judgment compelling defendants to prepare an accounting.

Now before the Court is RIIS' motion to compel arbitration (Doc. 12), to which Teschendorf has responded (Doc. 15) and RIIS has replied (Doc. 16). For the reasons that follow, RIIS' motion is DENIED.

## II. BACKGROUND

Teschendorf worked as a commissioned salesperson at RIIS from 2009 until her termination on November 17, 2017.

**1.**

On March 14, 2016, RIIS Human Resources Manager Danielle Bates (Bates) emailed all RIIS employees a copy of the updated RIIS Employee Handbook (Handbook). Bates' email read:

> Attached you will find the updated RIIS handbook. We have made some improvements so I encourage you to read the handbook in its entirety. Below you will find a list of the policies that received the biggest makeover.

(Doc. 12-3). Bates then listed six changes that were made to the Handbook. She said nothing about an arbitration agreement. At the end of the email, Bates wrote:

> ***Due to the number of changes RIIS has made to the handbook we are asking every employee to acknowledge that we have updated the current handbook and you understand the changes. You can do this by replying to this email with the word **agree** by Thursday, March 31st.

(Id.) (emphasis in original). On March 24, 2016, Bates sent another email stating:

> Reminder*** Please email back "agree" to me by March 31st. If you have any questions on the updated handbook I would be happy to talk with you anytime.

(Id.). Teschendorf did not respond to Bates' email, so Bates sent her a third email on

April 4, 2016, stating:

> I did not receive your acknowledgement of the handbook, please send that in today. Just reply "agree" stating you understand the changes and have received the updated handbook.

(Id.). That same day, Teschendorf responded to Bates' email with the word "agree."

(Id.).

**2.**

One of the changes made to the Handbook was the addition of an arbitration agreement entitled "Contract Between Employee and RIIS, LLC and Acknowledgement and Acceptance of Employee Handbook." (Doc. 12-2). The arbitration agreement provides in relevant part:

> I, the undersigned employee, in consideration of my employment or continued employment, hereby acknowledge and agree to the following:
> I hereby acknowledge that I have received a copy of the employee handbook of RIIS, L.l.C. (the "Company") dated xxxxxxxxxxx (the "Handbook"), and that **the Handbook does not create a contract between me and the Company**. The Company policies may be unilaterally changed by the Company at any time.
>
> I agree that if a dispute arises concerning my employment with and/or termination . . . including but not limited to, any claim for wages or fringe benefits, claims of breach of contract, wrongful discharge, tort claims, invasion of privacy, slander, defamation, and/or any statutory claim including but not limited to discrimination or other violation under . . . Fair Labor Standards Act . . . shall be through the procedures and policies of the American Arbitration Association utilizing a single arbitrator. I hereby waive my right to adjudicate any claim against the Company Parties before any federal or state court or agency. I hereby also expressly waive my right to bring any action or claim under this Agreement as a member of any purported class or representative proceeding. This Contract applies to all claims whether brought during my employment with Company or at any time after termination of employment with Company.

(Doc. 12-2) (emphasis added). Teschendorf did not sign the arbitration agreement. RIIS says Teschendorf assented to the changes in the Handbook by responding to Bates' email with the word "agree."

## III.    LEGAL STANDARD

Under the Federal Arbitration Act (FAA), an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In deciding whether to enforce an arbitration agreement, a court must first determine "whether a valid agreement to arbitrate exists." Glazer v. Lehman Bros., 394 F.3d 444, 450 (6th Cir. 2005). Such is done by applying "ordinary state-law principles that govern the formation of contracts." Id. (quoting Fazio v. Lehman Bros., 340 F.3d 386, 393 (6th Cir. 2003)).

## IV.    ANALYSIS

The arbitration agreement at issue here does not constitute a binding contract, foremostly because it explicitly states that "the Handbook does not create a contract between me and the Company." Courts have declined to enforce arbitration agreements that specifically state they do not form a contract between the employer and employee. Hergenreder v. Bickford Senior Living Grp., LLC, 656 F.3d 411, 418 (6th Cir. 2011); Heurtebise v. Reliable Bus. Computers, 452 Mich. 405, 414 (1996); cf. Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 979 (6th Cir. 2007).

Further, "an illusory promise arises when a promisor retains the right to decide whether or not to perform the promised act." Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 315 (6th Cir. 2000). Here, because the Handbook provides that "[t]he

4

Company policies may be unilaterally changed by the Company at any time," RIIS' promise is illusory and unenforceable.

Thus, although Teschendorf typed the word "agree" to Bates' request for agreement "that we have updated the current handbook and you understand the changes," she agreed to a document that did not contain a contractual obligation to pursue arbitration before filing a lawsuit.

## V.    CONCLUSION

For the reasons described above, RIIS is not entitled to the enforcement of its arbitration agreement. The case will proceed in this Court.

SO ORDERED.

S/Avern Cohn  
AVERN COHN  
UNITED STATES DISTRICT JUDGE

Dated: April 18, 2018
Detroit, Michigan